IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TIFFANY DILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.: 2:17-cv-338-ECM |
| | ) | (WO) |
| MEGAN J. BRENNAN, | ) | |
| Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

This matter is before the Court on Defendant Megan J. Brennan's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (doc. 14) filed on October 5, 2018. The motion has been fully briefed by the parties. (Docs. 15 & 19). For the reasons that follow, the Defendant's motion is granted.

**I.  STANDARD OF REVIEW.**

**A. 12(b)(1) Motion to Dismiss.**

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, may be a factual or facial attack on subject matter jurisdiction. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1238 (11th Cir. 2002). A factual attack permits the district court to weigh evidence outside the

1

pleadings to satisfy itself of the existence of subject matter jurisdiction in fact. *Id.* at 1237. However, a facial attack merely questions the sufficiency of the pleading. *Id.* Under a facial attack, the district court accepts the plaintiff's allegations as true and need not look beyond the face of the complaint to determine whether the court has subject matter jurisdiction. *Id.; Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). If the court then finds that the pleading does not allege a basis for subject matter jurisdiction, the court will dismiss the complaint.

**B. 12(b)(6) Motion to Dismiss.**

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In analyzing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court assumes the factual allegations in the complaint to be true. However, "if allegations [in the complaint] are indeed more conclusory than factual,

2

then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Mamani v. Berzain*, 654 F.3d 1148, 1153–54 (11th Cir. 2011)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT.

Plaintiff Tiffany Dillard is employed as a Rural Carrier Associate ("RCA") with the United States Postal Service. (Doc. 2, p. 2). The Plaintiff alleges that she experienced gender discrimination, race discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964; further, the Plaintiff alleges that, at the hands of her supervisor, she experienced a violation of her First Amendment rights. *Id.* at 4–8.

The Plaintiff's claims of discrimination are based on her allegation that she was not permitted "to close U.S. Postal stations" while other RCAs were permitted to do so. *Id.* at 4. The Plaintiff claims that, because she was not permitted to perform this duty, she was precluded from "earn[ing] the associated extra pay." *Id.* at 3. The Plaintiff alleges that "males, at least two maybe more, were allowed to 'close' U.S. Postal Stations" and that the Plaintiff "had more seniority time" than those male RCAs. *Id.* at 3, 4, 6. The Plaintiff does not specify the race of these two unidentified

men, but instead asserts that she "cannot think of any other reason, other than her being a Female, or specially [sic] a Black Female, that she was not being allowed the opportunity to earn the extra money closing." *Id.* at 3.

In support of her harassment claim, the Plaintiff alleges that her supervisor was "following her, bumping into her, setting her up for discipline in an Express Mail situation, threatening her, calling her and telling her she was not needed when she was, among other acts . . . ." *Id.* at 8.

The Plaintiff claims she suffered retaliation when the U.S. Postal Service ceased allowing RCAs to close U.S. Postal Stations after the Equal Opportunity Employment Commission ("EEOC") sent an investigator in response to the Plaintiff's complaint. *Id.* at 3–5. She alleges that her co-workers blamed her for this policy change and that she received "flack" from these co-workers. *Id.* at 4.

Finally, the Plaintiff claims that her First Amendment rights were violated when, in a group meeting, she asked her supervisor why some RCAs with less seniority were permitted to close U.S. Postal Stations when she was not permitted to do so. *Id.* According to the Plaintiff, her supervisor cut her off and did not permit her to speak. *Id.*

The Plaintiff exhausted her administrative remedies, and the EEOC mailed her a notice, which specified that the Plaintiff had the right to file a civil action in United States District Court within ninety days of receiving the notice. (Doc. 2-1, p.

3). The notice further specified that "the Commission will presume that this decision was received within five (5) calendar days after it was mailed." *Id.* at 4. The notice was mailed on February 8, 2017. *Id.* The Plaintiff filed her initial Complaint 103 days later, on May 22, 2017. (Doc. 1, p. 8).

The Court construes the motion to dismiss the First Amendment claims to be a facial attack on subject matter jurisdiction, pursuant to Rule 12(b)(1). The Court construes the motion to dismiss the Title VII claims to be a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

### III.  FIRST AMENDMENT CLAIMS.

The Plaintiff alleges that her First Amendment rights were violated when her supervisor did not permit her to speak at a group meeting, and she seeks to hold the United States Postal Service liable therefor. The Defendant asserts that the Plaintiff's First Amendment claims are barred by sovereign immunity. Where sovereign immunity bars a specific claim, a district court must dismiss the claim for lack of subject matter jurisdiction. *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015) ("If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit.").

A claim against a federal employee in her official capacity is construed as a claim against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165–66

5

(1985); *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) ("[A]n official capacity suit against a government official is generally treated as a suit against the underlying government entity. . . ."). The United States, its agencies, and its employees in their official capacities are immune from suit except to the extent that Congress has waived sovereign immunity via statute. *See Zelaya*, 781 F.3d at 1321–22; *Scott*, 405 F.3d at 1254. "[A] court must strictly observe the 'limitations and conditions upon which the Government consents to be sued' and cannot imply exceptions not present within the terms of the [statutory] waiver." *Zelaya*, 781 F.3d at 1322 (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

The Plaintiff filed suit against Megan J. Brennan, the United States Postmaster General, in her official capacity: this is equivalent to a suit against the United States Postal Service, a United States agency. The United States has not waived sovereign immunity in this context; this Court is thus without subject matter jurisdiction. Accordingly, the Plaintiff's First Amendment claims are dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## IV. TITLE VII CLAIMS.

The Plaintiff brings four Title VII claims: race discrimination, gender discrimination, harassment, and retaliation. However, these claims were not timely filed, and even if they were timely filed, the pleadings fail to state a claim upon which relief can be granted.

### A. Untimely Filing of Claims.

Before a federal employee can proceed with a Title VII action in district court, she must exhaust her administrative remedies. *See Peppers v. Cobb Cty.*, 835 F.3d 1289, 1296 (11th Cir. 2016). A plaintiff who wishes to file a lawsuit after exhausting administrative remedies must do so within ninety days of receiving the right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 2000e-16(c). This ninety-day deadline is strictly enforced. *See Norris v. Florida Dep't of Health & Rehab. Servs.*, 730 F.2d 682, 682 (11th Cir. 1984) (affirming summary judgment for the defendant where the plaintiff filed her Title VII complaint one day after the expiration of the ninety-day time limit); *Rodgers v. Potter*, 2006 WL 3477805, *3 (M.D. Ala. 2006) (granting the defendant's motion to dismiss where the plaintiff filed his Title VII complaint one day after the expiration of the ninety-day time limit). The plaintiff shoulders the initial burden of proving that her complaint was timely filed. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002) (concluding that the plaintiff failed to satisfy his burden when he failed to produce evidence of timeliness or rebut the evidence of tardiness). Indeed, "[o]nce a defendant contests the issue of whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005).

In the present case, the right-to-sue letter was mailed to the Plaintiff and her counsel of record on February 8, 2017. (Doc. 2-1, p. 4). The "Certificate of Mailing" attached to the letter reads that "the Commission will presume that this decision was received within five (5) calendar days after it was mailed." *Id.* The Plaintiff does not dispute that she received the notice within five days of its mailing. Thus, the Court finds that the Plaintiff received the letter within five days after it was mailed. Ninety days from February 13, 2017 (five days after the right-to-sue letter was mailed) is May 14, 2017. The Plaintiff did not file her initial Complaint until May 22, 2017, eight days after the expiration of the ninety-day period. Because the claims were not timely filed, the Title VII claims are dismissed with prejudice pursuant to Rule 12(b)(6).

**B. Failure to State a Claim Upon Which Relief Can be Granted.**

Even if the Title VII claims were timely filed, they would still fail to state a claim upon which relief could be granted.

    *i.     Discrimination Claims.*

While a *prima facie* case is an evidentiary standard, and not a pleading standard, it provides guidance on the factual allegations necessary to plead a plausible claim. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291–93 (11th Cir. 2010). To establish a *prima facie* case of discrimination pursuant to Title VII, a

plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) she received less favorable treatment than a similarly situated person outside her protected class. *See Flowers v. Troup Cty. Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).

The Eleventh Circuit has been careful to note that not every workplace difficulty qualifies as an "adverse employment action" for the purposes of making a claim for Title VII discrimination. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001) ("It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment actions."). "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." *Id.* at 1239 (internal quotation omitted).

> [T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Id.* (emphasis original).

While demonstrating an "adverse employment action" is demanding, the Eleventh Circuit held that the standard was met where an individual was improperly denied a raise in pay. *See Gillis v. Georgia Dep't of Corr.*, 400 F.3d 883, 888–89

(11th Cir. 2005) (holding that the plaintiff alleged an actionable "adverse employment action" when she alleged that, due to a performance review, she received a three percent raise as opposed to a five percent raise, a difference of $912.36 per year). The Court in *Gillis* was quick to note, however, that "this case does not involve disentitlement to a de minimus raise; rather, the denial of the raise at issue here was an employment decision that significantly affected [the plaintiff's] compensation." *Id.* at 888.

Notably, even if a plaintiff properly alleges an "adverse employment action," the plaintiff is still required to allege that such action was based on the employer's discriminatory animus. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331–32 (11th Cir. 1999) (reversing a district court's denial of judgment as a matter of law where the plaintiff did not present any evidence that her firing was based on discrimination). Further, in order to properly state a claim for discrimination, a plaintiff must allege that she and the other employee who is outside the protected class were "similarly situated in all material respects." *Lewis v. City of Union City*, --- F.3d ---, 2019 WL 1285058, *8–9 (11th Cir. March 21, 2019) (holding that whether a plaintiff and comparator are similarly situated in all material respects "will have to be worked out on a case-by-case basis," but providing that ordinarily a similarly-situated comparator: "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; "will have been subject to the same employment

10

policy, guideline, or rule as the plaintiff"; "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff"; and "will share the plaintiff's employment or disciplinary history . . . .").

Here, regarding the gender and race discrimination claims, the Plaintiff makes the bare allegation that "males, at least two maybe more, were allowed to 'close' U.S. Postal Stations" while she was not. (Doc. 2, pp. 4, 6). The Plaintiff did not identify the race of these men anywhere in the complaint, which is a nonstarter for the race discrimination claims. *See* (Doc. 2). The Plaintiff alleges that because she was not permitted to close the Stations, she was deprived of an opportunity to earn extra pay. *Id.* at 3–6. This bare allegation is insufficient to identify an "adverse employment action" for the purposes of Title VII liability. The Plaintiff has not alleged that the additional duty and pay are sufficiently "serious and material" to be consistent with a promotion or raise. The Plaintiff has not alleged a dollar amount, percentage, or other figure that would assist the Court in evaluating the potential pay change. *See Gillis*, 400 F.3d at 888 (holding that the denial of a raise is actionable but noting that the denial of a de minimis raise may not be).

However, even assuming that the Plaintiff properly alleged an "adverse employment action," her complaint still fails to state a claim upon which relief can be granted because the Plaintiff failed to plead specific facts that support an inference that the difference in treatment was based on her race or gender. The Plaintiff merely

asserted, without factual support, that she "cannot think of any other reason, other than her being a Female, or specially [sic] a Black Female, that she was not being allowed the opportunity to earn the extra money closing." (Doc. 2, p. 3). This allegation is insufficient to state a claim for discrimination. *See Stimpson*, *supra*. Even further, the Plaintiff failed to allege that she and the unidentified male employees were similarly situated in all material respects. She merely claims that she and these men were RCAs and that the Plaintiff "had more seniority time." (Doc. 2, p. 3). The Plaintiff's race and gender discrimination allegations fall short of stating a claim upon which relief can be granted. Accordingly, they are dismissed pursuant to Rule 12(b)(6).

    *ii.    Harassment Claims.*

The Eleventh Circuit articulated an exacting standard for pleading workplace harassment pursuant to Title VII:

> To prove a hostile work environment claim, an employee must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. When the employee's harassment claim is based on her race, she must prove five elements: (1) she belongs to a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for the environment under a theory of direct or vicarious liability.

*Smelter*, 904 F.3d at 1284. The "severe and pervasive" requirement has a subjective and objective component: the employee must subjectively perceive the harassment as severe enough to alter the conditions of employment, and this perception must be objectively reasonable. *Id.* at 1285. In meeting the subjective portion of the test, the Plaintiff must plead facts that suggest that the victim personally found the environment to be abusive. *See id.*

When evaluating the objective severity and pervasiveness of the alleged harassment, the court considers four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.*; *see Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247–48 (11th Cir. 1999) (holding that the alleged conduct "fell well short" where the claimant, alleged: (1) one instance in which the supervisor said to the claimant, "I'm getting fired up"; (2) one occasion in which the supervisor rubbed his hip against the claimant's hip while touching her shoulder and smiling; (3) two instances in which the supervisor made a sniffing sound while looking at the claimant's groin area and one instance of sniffing without looking at her groin; and (4) the supervisor's "constant" following and staring at the claimant.); *see also McCann v. Tillman*, 526 F.3d 1370, 1378–79 (11th Cir. 2008) (holding that the

sporadic use of racially derogatory language is not sufficiently severe or pervasive to create an actionable claim under Title VII).

Even if a plaintiff alleges conduct that is sufficiently severe or pervasive, that plaintiff must also allege facts that support an inference that the conduct was based on her membership in a protected class, as opposed to merely stemming from incivility. *See Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301–02 (11th Cir. 2007) ("Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment[,] that discriminates based on a protected category such as sex.").

The Plaintiff's allegations that her supervisor would follow her, bump into her, and threaten her fail to state a claim for actionable harassment. The Plaintiff does not allege any facts that support an inference that the alleged conduct was motivated by discrimination. Indeed, even extreme profanity and harassment will not create an actionable claim pursuant to Title VII where the profanity and harassment are not based on prohibited discrimination. Additionally, the alleged conduct falls short of the severe and pervasive conduct addressed by Title VII. Accordingly, the Plaintiff's harassment allegations fail to state a claim upon which relief can be granted and are dismissed pursuant to Rule 12(b)(6).

   *iii.*  *Retaliation Claims.*

To establish a *prima facie* case of retaliation pursuant to Title VII, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there is a causal relation between the two events. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012). "An action is materially adverse if it 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 1259 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The "petty slights" of co-workers in response to a claimant's reporting of "discriminatory behavior" does not give rise to an actionable claim for retaliation. *See Burlington*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."); *Patsalides v. City of Fort Pierce*, 724 Fed. Appx. 749, 752 (11th Cir. 2018) (holding that the "rude remarks and social slights" of co-workers in response to the plaintiff's reporting sexual harassment did not "create a retaliatory hostile work environment").

The Plaintiff wholly fails to assert factual allegations that give rise to an actionable retaliation claim. She claims that other employees gave her "flack" after she filed her complaint with the EEOC. Yet, Title VII does not immunize employees from the "flack" that the Plaintiff alleged. Thus, the Plaintiff failed to state a claim for retaliation, and the claim is dismissed pursuant to Rule 12(b)(6).

For the foregoing reasons, it is

ORDERED and ADJUDGED as follows:

1. That the Defendant's motion to dismiss (doc. 14) be and is hereby GRANTED.

2. That this case be and is hereby DISMISSED with prejudice.

3. Costs of this proceeding are taxed against the Plaintiff.

A separate final judgment will be entered in accordance with this order.

DONE this 27th day of March, 2019.

                                        /s/ Emily C. Marks
                                  EMILY C. MARKS
                                  CHIEF UNITED STATES DISTRICT JUDGE